IN RE M.I.W.

[365 N.C. 374 (2012)]

IN THE MATTER OF: M.I.W.

No. 148PA11

(Filed 27 January 2012)

**Appeal and Error— juvenile matters—jurisdiction pending appeal**

In a holding limited to the Juvenile Code, the trial court had subject matter jurisdiction to terminate parental rights where the motion to terminate was filed while an appeal was pending from a disposition giving custody to DSS, but the trial court acted on the motion to terminate only after the mandate resolving the appeal had been issued. N.C.G.S. § 7B-1003 prohibited only the exercise of jurisdiction before the mandate; issuance of the mandate by the appellate court returned the power to exercise subject matter jurisdiction to the trial court.

Justice EDMUNDS dissenting.

Chief Justice Parker and Justice TIMMONS-GOODSON join in this dissenting opinion.

Justice TIMMONS-GOODSON dissenting.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) of a unanimous, unpublished decision of the Court of Appeals, —— N.C. App. ——, 708 S.E.2d 216 (2011), affirming an order terminating parental rights entered on 11 June 2010 by Judge Ressoñ O. Faircloth in District Court, Harnett County. Heard in the Supreme Court on 14 November 2011.

*Duncan B. McCormick and E. Marshall Woodall for petitioner-appellee Harnett County Department of Social Services.*

*Robin E. Strickland for respondent-appellant mother.*

*Ryan McKaig for respondent-appellant father.*

*Pamela Newell, Guardian ad Litem Appellate Counsel, on behalf of the minor child-appellee.*

NEWBY, Justice.

This case asks whether, under the Juvenile Code, a trial court has subject matter jurisdiction to terminate parental rights when the motion to terminate was filed while an appeal in the case was pending but the court acted on the motion only after the mandate resolving the appeal

had been issued. We hold that N.C.G.S. § 7B-1003 prohibits only the exercise of jurisdiction before issuance of the mandate and that issuance of the mandate by the appellate court returns the power to exercise subject matter jurisdiction to the trial court. Because the trial court here did not exercise jurisdiction before the mandate's issuance, we affirm the decision of the Court of Appeals upholding the termination of respondents' parental rights.

Respondents are parents of a three-year-old juvenile, M.I.W., born on 16 February 2008. Respondent father was incarcerated on drug charges at the time of M.I.W.'s birth and has had very little involvement in M.I.W.'s life. Respondent father was previously incarcerated for indecent liberties with a minor and has been charged with numerous other crimes including statutory rape, contributing to the delinquency of a minor, violation of a domestic violence protective order, and assault on a female. Respondent mother has a history of drug abuse, including use of methamphetamines, and has serious mental health issues for which she has failed to follow her treatment plan. Her other three children were removed from her custody because of her drug abuse and unaddressed mental illness.

M.I.W. was initially removed from respondent mother's care in September 2008 when he was seven months old. Neighbors contacted police after seeing respondent mother drop M.I.W. several times, and they expressed concern that misuse of medication may have been responsible. M.I.W. was briefly placed with his paternal grandmother, and after she became unable to care for him, he was placed with his paternal uncle. On 15 December 2008, the Harnett County Department of Social Services (DSS) filed a juvenile petition alleging that M.I.W. was a neglected and dependent juvenile and sought an order for nonsecure custody, which the trial court promptly approved. After this filing M.I.W. remained with his uncle until 19 March 2009. On that day M.I.W. was taken to the hospital by social workers after employees at his day care center reported he arrived with bruises on his face, neck, forehead, back of the head, upper arms, and back. M.I.W. also had an open, infected wound on his ear. The physician's notes state that it looked like M.I.W.'s fingernails had been pulled out, and an examination revealed that M.I.W. was dehydrated and underweight and had two healing fractured ribs. Medical records indicate that these injuries were "diagnostic of child physical abuse" and were "not consistent with accidental injuries" but were "consistent with traumatic, abusive injures [sic]." After leaving the hospital, M.I.W. was placed in foster care, where he is currently thriving.

**IN RE M.I.W.**

[365 N.C. 374 (2012)]

A disposition hearing was held on 27 March 2009, followed by permanency planning hearings on 24 April and 8 May 2009. On 8 May 2009, the trial court entered its disposition order awarding full custody of M.I.W. to petitioner DSS. The permanent plan for M.I.W. was determined to be adoption. On 10 and 11 June 2009, respondents filed separate appeals.

While respondents' appeals of the disposition order were pending, DSS filed a motion in the cause to terminate respondents' parental rights on 2 July 2009. Respondent mother moved to dismiss the motion to terminate on 29 September 2009, alleging a lack of subject matter jurisdiction, and respondent father moved for the same on 12 March 2010. During the pendency of the appeal, the trial court continued the hearing on the motion to terminate twice, noting the necessity of a continuance because of the constraints of N.C.G.S. § 7B-1003(b)(1).

The Court of Appeals affirmed the trial court's disposition order on 2 February 2010, thereby resolving the appeal, and the mandate issued on 22 February 2010. On 12 March 2010, the trial court denied respondents' motions to dismiss the termination motion, and the court held termination hearings on 12 March, 9 April, and 30 April 2010. On 11 June 2010, the trial court terminated respondents' parental rights to M.I.W.

Respondent mother appealed the termination on 1 July 2010, followed by respondent father on 12 July 2010. The Court of Appeals affirmed, holding that, although the termination motion was filed by DSS during the pendency of the appeal from the disposition order, the trial court had subject matter jurisdiction over the motion. *In re M.I.W.*, —— N.C. App. ——, 708 S.E.2d 216, 2011 WL 340537, at *2 (2011) (unpublished). The court concluded: "A trial court does not violate N.C. Gen. Stat. § 7B-1003 when it holds the hearing on the [motion] to terminate parental rights after this Court's mandate has issued." *Id.* Respondents sought review, and we allowed their petitions for writ of certiorari on the issue of subject matter jurisdiction. *In re M.I.W.*, —— N.C. ——, 710 S.E.2d 5 (2011); *id.*, —— N.C. ——, 711 S.E.2d 434 (2011).

The primary question presented is whether, under the Juvenile Code, the trial court had subject matter jurisdiction when it granted the motion to terminate respondents' parental rights. Respondents argue that N.C.G.S. § 7B-1003 removes the trial court's jurisdiction such that filing a termination of parental rights (TPR) motion while an appeal is pending is a nullity, as are subsequent actions pursuant to that motion. DSS argues that the statute prevents the trial court only from acting on a termination motion while an appeal is pending, not from acting on a

motion that was filed during pendency of an appeal once the appeal has been resolved.

As a preliminary matter, it is crucial to understand the basis for the trial court's subject matter jurisdiction in TPR cases. "In matters arising under the Juvenile Code, the court's subject matter jurisdiction is established by statute." *In re K.J.L.*, 363 N.C. 343, 345, 677 S.E.2d 835, 837 (2009). When subject matter jurisdiction is a statutory creation, the General Assembly can, within the bounds of the Constitution, set whatever limits it wishes on the possession or exercise of that jurisdiction, including limits on jurisdiction during a pending appeal. *See In re T.R.P.*, 360 N.C. 588, 590, 636 S.E.2d 787, 790 (2006). The General Assembly has employed that authority here in enacting N.C.G.S. § 7B-1003.

Generally, N.C.G.S. § 1-294 operates to stay further proceedings in the trial court upon perfection of an appeal. N.C.G.S. § 1-294 (2011) ("When an appeal is perfected . . . it stays all further proceedings in the court below upon the judgment appealed from, or upon the matter embraced therein . . . ."); *see also Veazey v. City of Durham*, 231 N.C. 357, 363, 57 S.E.2d 377, 382 (1950); *Pruett v. Charlotte Power Co.*, 167 N.C. 598, 600, 83 S.E. 830, 830 (1914) ("[A]n appeal . . . operates as a stay of proceedings" and "the court below is without power to hear and determine questions involved in an appeal pending in the [appellate court]."). When a specific statute addresses jurisdiction during an appeal, however, that statute controls over the general rule. *See In re R.T.W.*, 359 N.C. 539, 550, 614 S.E.2d 489, 496 (2005), *superseded on other grounds by statute*, Act of Aug. 23, 2005, ch. 398, sec. 12, 2005 N.C. Sess. Laws 1455, 1460-61 (amending various provisions of the Juvenile Code)).

Given the unique nature of the Juvenile Code, with its overarching focus on the best interest of the child, it is not surprising that the General Assembly recognized that the needs of the child may change while legal proceedings are pending on appeal. *See id.* at 551, 614 S.E.2d at 496 ("Applied to appeals in child custody cases, however, N.C.G.S. § 1-294 would leave trial courts powerless to modify custodial arrangements *in response to changed circumstances and the child's best interests*." (emphasis added)); *see also In re K.L.*, 196 N.C. App. 272, 278, 674 S.E.2d 789, 793 (2009). Because the General Assembly enacted N.C.G.S. § 7B-1003 in recognition of the need for a modified approach in juvenile cases, that statute controls over N.C.G.S. § 1-294, and any limits placed on the possession and exercise of jurisdiction by the trial court while an appeal is pending will come from N.C.G.S. § 7B-1003,

rather than the general rule. Consequently, our holding is limited to matters arising under the Juvenile Code.

An earlier case from this Court held that "a trial court retains jurisdiction to enter an order terminating parental rights while a custody order in the same case is pending appellate review." *In re R.T.W.*, 359 N.C. at 540, 614 S.E.2d at 490. We concluded that a trial court could hold termination hearings and enter a termination order while an appeal was pending, thereby "render[ing] the pending appeal moot." *Id.* at 553, 614 S.E.2d at 498. In reaching that conclusion we relied on our finding that the version of N.C.G.S. § 7B-1003 then governing jurisdiction during appeals "nowhere reference[d] orders terminating parental rights." *Id.* at 550, 614 S.E.2d at 496. The General Assembly amended N.C.G.S. § 7B-1003 in 2005, and it now states in relevant part:

> Pending disposition of an appeal, unless directed otherwise by an appellate court or subsection (c) of this section applies, the trial court shall:
>
> (1) Continue to exercise jurisdiction and conduct hearings under this Subchapter with the exception of Article 11 of the General Statutes; and
>
> (2) Enter orders affecting the custody or placement of the juvenile as the court finds to be in the best interests of the juvenile.

N.C.G.S. § 7B-1003(b) (2012). Article 11 of Chapter 7B of the General Statutes governs termination of parental rights, so N.C.G.S. § 7B-1003 now facially addresses that process. In light of this change, we must determine what the General Assembly meant to prohibit by referencing Article 11 of the Juvenile Code.

When interpreting a statute, the Court must first look to legislative intent. *In re D.S.*, 364 N.C. 184, 187, 694 S.E.2d 758, 760 (2010) (citing *Shelton v. Morehead Mem'l Hosp.*, 318 N.C. 76, 81-82, 347 S.E.2d 824, 828 (1986)). To determine the intent of the legislature, we start with the language of the statute itself. *Fowler v. Valencourt*, 334 N.C. 345, 348, 435 S.E.2d 530, 532 (1993) (citing *Elec. Supply Co. of Durham v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991)). If the language used is unambiguous, the Court will give the plain and ordinary meaning to the words in the statute. *Id.* (citing *State ex. rel. Utils. Comm'n v. Edmisten*, 291 N.C. 451, 465, 232 S.E.2d 184, 192 (1977)).

Here the relevant statutory language unambiguously prohibits the trial court from doing only two things regarding termination proceedings

while an appeal is pending: exercising jurisdiction and conducting hearings. *See Alberti v. Mfd. Homes, Inc.*, 329 N.C. 727, 732, 407 S.E.2d 819, 822 (1991) ("[A] statute's expression of specific exceptions implies the exclusion of other exceptions." (citation omitted)). Because the trial court did not conduct hearings while the appeal was pending, the only issue here is whether the trial court otherwise exercised jurisdiction during that time period.

The plain and ordinary meaning of "exercise" is "[t]o make use of [or] to put into action." *Black's Law Dictionary* 654 (9th ed. 2009). "Jurisdiction," as it relates to subject matter, is defined as "[a] court's power to decide a case or issue a decree." *Id.* at 927; *see also In re T.R.P.*, 360 N.C. at 590, 636 S.E.2d at 790 (describing subject matter jurisdiction as "the power to pass on the merits of the case" (citation and quotation marks omitted)). Taken together, then, the phrase "exercise jurisdiction" refers to a court's use of its power to decide the merits of a case or issue a decree. Exercising jurisdiction, in the context of the Juvenile Code, requires putting the court's jurisdiction into action by holding hearings, entering substantive orders or decrees, or making substantive decisions on the issues before it. In contrast, having jurisdiction is simply a state of being that requires, and in some cases allows, no substantive action from the court. *See Jerson v. Jerson*, 68 N.C. App. 738, 740, 315 S.E.2d 522, 523 (1984) (stating that in the child custody context, "even when the district court *has jurisdiction* . . . , it *has no authority to exercise its jurisdiction* without making findings of fact which support the conclusion that such exercise is required in the interest of the child . . . ." (emphasis added)). By its own plain language, N.C.G.S. § 7B-1003 does not state that the trial court lacks jurisdiction over TPR proceedings during pendency of an appeal, but instead specifies that a trial court may not "exercise" the jurisdiction it has until the appeal is resolved and the mandate has issued.

By choosing to prohibit exercising jurisdiction, rather than stating that the trial court is divested of jurisdiction, the General Assembly has signaled that the subject matter jurisdiction of the trial court is not removed. *See Alberti*, 329 N.C. at 732, 407 S.E.2d at 822. This is consistent with other distinctions in the Juvenile Code between exercising and having jurisdiction. *See, e.g.*, N.C.G.S. § 7B-1101 (2011) ("[B]efore exercising jurisdiction under this Article, the court shall find that it has jurisdiction to make a child-custody determination . . . ."); *accord Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 704 (4th Cir. 2010) ("[D]ifferent words used in the same statute should be assigned different meanings . . . ."); *see also In re K.J.L.*, 363 N.C. at

347-48, 677 S.E.2d at 838 (distinguishing between certain points at which the court has jurisdiction and actually exercising that jurisdiction); *In re T.S.*, 178 N.C. App. 110, 115, 631 S.E.2d 19, 23 (stating that setting a case for hearing and sending notice of the hearing to the respondent does not "constitute[ ] the exercise of jurisdiction" and is distinct from actually holding the hearing, which is the exercise of jurisdiction), *disc. rev. denied*, 360 N.C. 647, 637 S.E.2d 218 (2006), *aff'd per curiam*, 361 N.C. 231, 641 S.E.2d 302 (2007).

Under the Juvenile Code so long as a trial court does not exercise its jurisdiction until after the mandate resolving the appeal has issued, that court may act on a termination motion filed during the appeal's pendency.[1] In this case the trial court acted within the bounds of N.C.G.S. § 7B-1003 because it did not exercise jurisdiction over the termination motion until 12 March 2010, over two weeks after the mandate issued, when it denied respondents' motions to dismiss the termination motion, held the first termination hearing, and began the process of terminating respondents' parental rights.[2] Further, in this case the court did not exercise jurisdiction until after the end of the fifteen-day period in which respondents could have filed a petition for discretionary

---

1. Though not binding on this Court, two Court of Appeals panels have interpreted N.C.G.S. § 7B-1003 to limit the trial court's power to make substantive changes to parental rights while an appeal is pending, rather than to limit the court's possession of jurisdiction or the parties' ability to act. *See In re N.F.*, 200 N.C. App. 617, 687 S.E.2d 710, 2009 WL 3583819, at *2 (2009) (unpublished) (holding that the trial court acted inconsistently with N.C.G.S. § 7B-1003 by holding hearings on a termination of parental rights petition not because DSS filed the petition during pendency of the appeal but because the hearings were held before the mandate issued); *In re K.L.*, 196 N.C. App. at 277, 279, 674 S.E.2d at 793, 794 (stating that N.C.G.S. § 7B-1003 "sets out the trial court's *authority to enter orders* pending appeal" and "provid[es] that the trial court lacks jurisdiction to *conduct TPR proceedings* following an appeal". (emphasis added)). Similarly, in *In re P.P.*, 183 N.C. App. 423, 426, 645 S.E.2d 398, 400 (2007), the Court of Appeals noted that N.C.G.S. § 7B-1003 would not be violated when "the hearing on the petitions [to terminate] occurred after [the Court of Appeals'] mandate had issued" unless the results in that hearing were contrary to the result of the Court of Appeals' mandate. Though the ultimate petition for termination was filed after the mandate issued in *In re P.P.*, the court's statement appears to be more broadly applicable to the meaning of N.C.G.S. § 7B-1003. That the General Assembly has failed to amend N.C.G.S. § 7B-1003 to state otherwise since these interpretations were issued may be taken as further evidence that the legislature intended only to limit the exercise of jurisdiction by the trial court pending appeal. *See Young v. Woodall*, 343 N.C. 459, 462-63, 471 S.E.2d 357, 359 (1996) ("The failure of a legislature to amend a statute which has been interpreted by a court is some evidence that the legislature approves of the court's interpretation.").

2. The trial court did enter two orders continuing the motion to terminate until after the appeal was resolved. These nonsubstantive orders were entered only to preserve the TPR filing DSS was allowed to make until the court was able to exercise

**IN RE M.I.W.**

[365 N.C. 374 (2012)]

review. N.C. R. App. P. 15(b). No stay was requested or issued to prevent enforcement of the Court of Appeals' decision.

This interpretation is consistent with the central purpose of the Juvenile Code. *See Elec. Supply Co.*, 328 N.C. at 656, 403 S.E.2d at 294 ("In matters of statutory construction, our primary task is to ensure that the purpose of the legislature . . . is accomplished." (citation omitted)). Interpretations of the Code are guided by "the fundamental principle underlying North Carolina's approach to controversies involving child neglect and custody[—]that the best interest of the child is the polar star." *In re Montgomery*, 311 N.C. 101, 109, 316 S.E.2d 246, 251 (1984). The Code itself reflects this goal in its statement of purpose by requiring that its provisions "be interpreted and construed so as . . . [t]o provide standards . . . for ensuring that the best interests of the juvenile are of paramount consideration by the court." N.C.G.S. § 7B-100 (2011). Our holding serves that purpose by minimizing procedural delay that interferes with addressing the needs of the child when that delay is unnecessary to protect the rights of parents.

In particular, our decision today is consistent with the obligations placed on DSS by the Juvenile Code. N.C.G.S. § 7B-907(e) states that whenever "a proceeding to terminate the parental rights of the juvenile's parents is necessary in order to perfect the permanent plan for the juvenile," DSS shall file a proceeding[3] "to terminate parental

jurisdiction again. This was not an exercise of jurisdiction in violation of the statute because it had no substantive effect on respondents' parental rights, and these procedural orders are not challenged here. *Cf. In re T.S.*, 178 N.C. App. at 115, 631 S.E.2d at 23 (concluding that noticing a matter for hearing in and of itself does not "constitute[ ] the exercise of jurisdiction").

3. For the purposes of this holding, it is immaterial whether the TPR proceedings are begun by a petition or a motion in the cause. The first requirement placed on the trial court, in the case of a TPR petition, is to issue a summons to respondents. N.C.G.S. § 7B-1106(a) (2011). We have previously stated the issuance of a summons in a juvenile case is not an exercise of jurisdiction but "apprises the necessary parties that the trial court's subject matter jurisdiction has been invoked [by the pleadings] and that the court *intends to exercise jurisdiction* over the case." *In re K.J.L.*, 363 N.C. at 347, 677 S.E.2d at 838 (emphasis added). Therefore, the court will not exercise jurisdiction here in violation of N.C.G.S. § 7B-1003 by issuing the summons, but will instead indicate its intention to proceed when it is able. Likewise, providing notice to the respondent when TPR proceedings are initiated by a motion in the cause does not require the court to exercise jurisdiction because N.C.G.S. § 7B-1106.1 places no burden on the court, instead requiring that notice be given by the movant. Thus, whether the TPR proceeding begins with a petition or a motion in the cause, the parties will receive notice without any exercise of jurisdiction by the trial court. Once notice has been given, all further requirements of Article 11 will be tolled until the power to exercise jurisdiction is returned to the trial court.

rights within 60 calendar days from the date of the permanency planning hearing unless the court makes written findings why" that cannot be accomplished. *Id.* § 7B-907(e) (2011). Here, because the last permanency planning hearing was held on 8 May 2009, the statute intended that DSS would file a TPR motion within sixty calendar days after that date, which it did.

Importantly, our interpretation of N.C.G.S. § 7B-1003 does not allow form to be elevated over substance. It is undisputed that the trial court would have had jurisdiction to terminate respondents' parental rights if the motion to terminate had been filed before the notice of appeal was filed. The notice of appeal would simply prevent the trial court from exercising jurisdiction during the pendency of the appeal. Once the appeal was decided the trial court could then exercise jurisdiction. In light of this, it would be incongruous for the mere timing of the TPR filing to determine whether the trial court has subject matter jurisdiction. The language of N.C.G.S. § 7B-1003 prevents such an illogical result by suspending only the exercise—not the possession—of jurisdiction while an appeal is pending.

Within the statutory scheme of the Juvenile Code, the trial court did not act without subject matter jurisdiction when it granted petitioner's motion to terminate respondents' parental rights. The trial court had jurisdiction at the time it acted because N.C.G.S. § 7B-1003 did not remove its jurisdiction during the appeal of the disposition order, but only limited its exercise during that interval. Because the trial court did not exercise jurisdiction during the pendency of the appeal, but waited to do so only after the Court of Appeals' mandate issued, the trial court did not violate N.C.G.S. § 7B-1003. Accordingly, as to the issue before us on certiorari, we affirm the decision of the Court of Appeals.

---

If the name or identity of the parent whose rights are to be terminated is unknown, N.C.G.S. § 7B-1105 requires the trial court to hold a hearing to identify that parent. N.C.G.S. § 7B-1003 suspends that very act while an appeal is pending, however. This Court has long recognized the principle that statutes dealing with the same subject matter must be construed in *pari materia* and reconciled, if possible. *See, e.g., Elec. Supply Co.*, 328 N.C. at 656, 403 S.E.2d at 294 (citing *Great S. Media, Inc. v. McDowell Cnty.*, 304 N.C. 427, 430-31, 284 S.E.2d 457, 461 (1981)). Applying that principle here leads us to conclude that even though N.C.G.S. § 7B-1105 requires the trial court to exercise jurisdiction by conducting a hearing within ten days after a triggering event, the time period set forth in that statute must be tolled if the statute is to be construed in conformity and reconciled with N.C.G.S. § 7B-1003. In contrast, the same analysis does not apply to the time limit mandated in N.C.G.S. § 7B-907(e) because that statute requires that the described action be taken by a party, not by the trial court. This statutory framework does not deprive the parent of notice because after the tolling period ends, the procedure set out in N.C.G.S. § 7B-1105 would be followed before terminating parental rights.

AFFIRMED.

Justice EDMUNDS dissenting.

I believe that the General Assembly intended to remove completely a trial court's subject matter jurisdiction over termination of parental rights (TPR) matters while an appeal in the underlying case involving the juvenile is pending, and that the pertinent statutes reflect that intent. Because the trial court here issued its order terminating respondents' parental rights in response to a TPR motion that was not filed until *after* respondent parents filed an appeal of the trial court's underlying custody order in the case, I would hold the TPR order is void for lack of subject matter jurisdiction and would reverse the Court of Appeals.

"When interpreting a statute, we ascertain the intent of the legislature, first by applying the statute's language and, if necessary, considering its legislative history and the circumstances of its enactment." *Shaw v. U.S. Airways, Inc.*, 362 N.C. 457, 460, 665 S.E.2d 449, 451 (2008) (citations omitted). When the statutory language is ambiguous, we consider legislative history and the circumstances surrounding enactment of the statute. *See id.*

The majority argues that section 7B-1003(b) is unambiguous and its meaning plain, thereby avoiding the need to consider the relevant legislative history. From this plain meaning analysis, the majority creates an expansive notion of jurisdiction by using a dictionary definition of the word "exercise" to adopt a two-tier concept of subject matter jurisdiction in which a trial court may "have" jurisdiction to accept a motion in the cause or a petition that initiates a TPR action and to issue "nonsubstantive" orders such as continuances, but may not "exercise" jurisdiction to take other actions. Thus, a trial court may acquire and have a form of dormant jurisdiction that blossoms into full jurisdiction only upon issuance of the mandate of the Court of Appeals. The majority cites no binding precedent for this notion and I can find none. I believe that this interpretation is inconsistent with the intent of the General Assembly and that the majority's dichotomy could have unforeseen and unforeseeable consequences to the jurisprudence of North Carolina.

While I believe the phrase "exercise jurisdiction" in section 7B-1003(b) is at least arguably ambiguous, I also believe the circumstances surrounding the 2005 amendments to that statute demonstrate that the General Assembly intended to abrogate completely a trial court's jurisdiction over TPR matters during the pendency of an appeal, thus resolving any ambiguities. Prior to the amendments, this Court faced a similar

question relating to child custody. *In re R.T.W.*, 359 N.C. 539, 542, 614 S.E.2d 489, 491 (2005). In *R.T.W.*, the trial court had entered a custody review order that the respondent parent appealed to the Court of Appeals. *Id.* at 541, 614 S.E.2d at 490. While the appeal of the custody review order was pending, the county DSS moved to terminate the respondent's parental rights and the trial court entered a termination order before the Court of Appeals issued its decision. *Id.* at 541, 614 S.E.2d at 490-91. The Court of Appeals vacated the termination order, ruling that the trial court lacked jurisdiction to terminate parental rights while the appeal of the custody review order was pending. *Id.* at 541, 614 S.E.2d at 491.

This Court reversed. *Id.* at 540, 614 S.E.2d at 490. After reviewing the statutes then in effect, this Court stated that "we hold a trial court retains jurisdiction to terminate parental rights during the pendency of a custody order appeal in the same case," *id.* at 553, 614 S.E.2d at 498, and, more broadly, that "[w]e hold the pending appeal of a custody order does not deprive a trial court of jurisdiction over termination proceedings," *id.* at 542, 614 S.E.2d at 491. Our opinion was issued on 1 July 2005.

The General Assembly's reaction was swift and its intent plain. Effective 1 October 2005, the General Assembly amended Article 10 (Modification and Enforcement of Dispositional Orders; Appeals) and Article 11 (Termination of Parental Rights) of Chapter 7B to revoke a trial court's jurisdiction over TPR matters generally during the pendency of an appeal. Act of Aug. 23, 2005, ch. 398, 2005 N.C. Sess. Laws 1455. Before the amendments, Articles 10 and 11 contained their own sections governing a trial court's continuing power to act regarding dispositional orders (Article 10) and TPR matters (Article 11) while appeals of those matters were pending in the appellate division. N.C.G.S. §§ 7B-1003, -1101, -1113 (2003). If the legislature simply wanted to deny a trial court the power to "exercise jurisdiction" to terminate parental rights during the pendency of an appeal, as the majority suggests, it could have accomplished this result easily by amending the relevant sections of Articles 10 and 11. Instead, the General Assembly repealed section 7B-1113 outright while modifying the jurisdictional section in Article 10, section 7B-1003, to provide that, while a trial court could continue to exercise jurisdiction and hold hearings in matters concerning abuse, neglect, and dependency during the pendency of an appeal, the court was prohibited from taking action under Article 11. *Id.* § 7B-1003 (2009).

**IN RE M.I.W.**

[365 N.C. 374 (2012)]

In addition, section 7B-1003(b)(2) preserves a trial court's ability to issue orders related to a juvenile's custody or placement so long as the order is in the juvenile's best interests, an authority trial courts already had prior to the 2005 amendments. While the 2005 amendments prevent trial courts from exercising their Article 11 jurisdiction during an appeal, the provisions of section 7B-1003(b)(2) ensure that a trial court can still issue orders related to the safety and best interests of the child even when acting under Article 11. By including subdivision (b)(2) in section 7B-1003, the General Assembly thus made allowance for this Court's concern in *R.T.W.* that divesting a trial court of jurisdiction would allow a parent to file serial appeals and stymie the statutory provisions which protect the best interests of the child. *See In re R.T.W.,* 359 N.C. at 552, 614 S.E.2d at 497.

In my view, the General Assembly's wholesale reworking of the applicable statutes, undertaken in response to our holding in *R.T.W.,* manifests an intent to remove in all respects a trial court's jurisdiction over TPR matters during the pendency of an appeal. Not only is this reading of section 7B-1003(b) consistent with the language of the statute and the events surrounding its modification, it acknowledges the General Assembly's prerogative to amend statutes in response to decisions of this Court. *See, e.g., Rosero v. Blake,* 357 N.C. 193, 199-205, 581 S.E.2d 41, 45-48 (2003) (describing the legislative reaction to this Court's opinion in *Jolly v. Queen,* 264 N.C. 711, 142 S.E.2d 592 (1965)), *cert. denied,* 540 U.S. 1177, 124 S. Ct. 1407, 158 L. Ed. 2d 78 (2004).

The implications of the majority's analysis are uncertain, and many unanswered questions remain in the field of juvenile law. For example, the majority opinion suggests that notice may be issued upon the filing of a TPR petition or motion in the cause while an appeal is pending. Will notice have to be reissued once the appellate court issues its mandate? If a respondent loses the appeal of a custody order in the Court of Appeals in a split decision and appeals as a matter of right to this Court, will the TPR action proceed in the trial court in the interval after the Court of Appeals issues its mandate and before the notice of appeal of right is filed? What "nonsubstantive" orders can the trial court issue during the pendency of the appeal, and what "substantive" orders are forbidden?

In contrast, I believe that an interpretation of the statute to the effect that a trial court's subject matter jurisdiction could not be invoked during the pendency of an appeal would be consistent with the intent of the General Assembly while avoiding the uncertainties raised

by the majority's holding. Indeed, the only purported glitch in such an interpretation, noted by petitioners in their briefs, is resolved in the statutes. Petitioners contend that a complete removal of jurisdiction from a trial court during the pendency of an appeal would force a DSS to ignore the requirement in section 7B-907(e) that the DSS director file a TPR petition within sixty days of a permanency planning hearing if termination is part of the permanent plan. However, section 7B-907(e) also allows a trial court to extend the sixty-day time period after it makes written findings explaining the delay. In such a case, the DSS director need only request that the trial court issue a written finding that, because of the pending appeal, the petition cannot be filed within the sixty days required by section 7B-907(e). The trial court's action then falls outside the jurisdictional scope of Article 11 and thus is permitted by section 7B-1003.

Finally, while the majority limits its holding to matters arising under the Juvenile Code, I fear that its view of bifurcated jurisdiction may bleed into discussions of jurisdiction outside the context of TPR proceedings.

This case has lingered and I do not doubt the need for a rapid resolution. Nevertheless, this Court should not tinker unnecessarily with the mechanism of subject matter jurisdiction, nor should we disregard the unmistakable intent of the General Assembly. I respectfully dissent.

Chief Justice PARKER and Justice TIMMONS-GOODSON join in this dissenting opinion.

Justice TIMMONS-GOODSON dissenting.

I agree fully with Justice Edmunds's well-reasoned dissent. I write separately out of concern that the majority rewrites several significant provisions of the Juvenile Code in an attempt to reconcile its interpretation of section 7B-1003. In so doing the majority raises more questions than it answers and does nothing to expedite termination proceedings in the best interest of the child.

The majority goes to great lengths to justify its conclusion that by using the phrase "exercise jurisdiction" in N.C.G.S. § 7B-1003, the legislature unambiguously intended to create a two-tier notion of subject matter jurisdiction. In that statute the legislature prohibited the trial court from "exercising jurisdiction" over termination of parental rights ("TPR") cases during pendency of an appeal of a custody order. N.C.G.S. § 7B-1003 (2011). This novel notion of subject matter jurisdiction, which Justice Edmunds aptly critiques, conflicts with several statutes. For

**IN RE M.I.W.**

[365 N.C. 374 (2012)]

example, under our General Statutes, upon the filing of a TPR motion or petition pending appeal of a custody order, the respondent must file an answer within thirty days, *id.* §§ 7B-1106, -1106.1 (2011), and the trial court must hold a TPR hearing within ninety days, *id.* § 7B-1109(a) (2011). Under the majority's view, how can the trial court hold TPR hearings within ninety days of the filing of a TPR motion or petition during pendency of an appeal when section 7B 1003(b) expressly prohibits the holding of hearings during that time? Further, how will a parent know that the Department of Social Services ("DSS") has filed a petition to terminate parental rights when the trial court cannot exercise its jurisdiction by issuing a summons to the parent? *In re J.T.*, 363 N.C. 1, 672 S.E.2d 17 (2009) (holding that issuance of a summons is an exercise of jurisdiction).

In an attempt to resolve these and other questions—questions that arise only because of the majority's interpretation of section 7B-1003—the majority rewrites several essential statutes. Buried in the fine print of footnote three, the majority makes the extraordinary assertion that by using the word "exercise" in section 7B 1003, the legislature intended that "all further requirements of Article 11 will be tolled until the power to exercise jurisdiction is returned to the trial court."

The consequences of this broad declaration are significant. First, the majority tolls the thirty-day answer periods required by sections 7B-1106 and 1106.1 until issuance of the Court of Appeals' mandate. Second, the majority tolls the requirement of section 7B-1109(a) that the trial court conduct a TPR hearing within ninety days of a TPR filing. Third, the majority tolls the requirement of section 7B-1105 that the trial court hold a hearing within ten days to determine the name or identity of a parent whose rights are to be terminated. The legislature gives no indication that it intended the requirements of these four statutes to be tolled. Moreover, if the legislature desired the sweeping result that "all . . . requirements of Article 11" be tolled until issuance of the Court of Appeals' mandate, the legislature would have said so expressly. It is the role of the legislative branch, not the judicial branch, to revise statutes.

The majority opinion raises additional questions about elements critical to the administration of fair and orderly termination proceedings. The majority asserts in footnote three that a summons is not an exercise of jurisdiction and in doing so ignores our holding to the contrary just two years ago. *In re J.T.*, 363 N.C. at 4-5, 672 S.E.2d at 19. In *In re J.T.*, authored by Justice Newby, we determined that the issuance of a summons constitutes an invocation of subject matter jurisdiction in TPR cases. *Id.* at 4, 672 S.E.2d at 19 ("[T]he trial court's

subject matter jurisdiction was properly invoked upon the issuance of a summons."). Short of reversing *In re J.T.*, I do not see how the majority could contend that issuance of a summons is anything other than an exercise of jurisdiction. At a minimum, the majority must address *In re J.T.*

Another unanswered question is how, once the Court of Appeals' mandate has issued, a parent is to be informed that the tolled thirty-day response clock has restarted. No provision of the Juvenile Code speaks to this situation because it was created today by the majority. Surely a parent's due process rights ensure that she will receive some sort of notice informing her that she can file an answer. If this notice comes in the form of a post-mandate summons, then does the response clock start upon issuance of the mandate or upon delivery of that summons? Further, if a post-mandate summons is to be issued, what information must it contain?

The foregoing problems and uncertainty created by the majority's holding underscore the importance of leaving for the legislature the task of revising interlaced statutes that comprise a holistic statutory framework. This is not the role of the judicial branch.

Ironically, the holding of the majority does not ensure that TPR hearings will occur sooner after resolution of a custody appeal than if the Court had held that a TPR filing does exercise the jurisdiction of the trial court. Under the majority view, a hearing will occur no sooner than thirty days after issuance of the Court of Appeals' mandate because of respondent's thirty-day answer period. N.C.G.S. §§ 7B 1106, -1106.1. Under my view—that a TPR filing invokes the trial court's jurisdiction and is not permitted until issuance of the Court of Appeals' mandate— the hearing timeline is the same. DSS could file its TPR petition or motion on the day the mandate issues and the trial court could schedule a hearing for when the thirty-day response period ends. Thus, the majority's view does not benefit the juvenile by shortening the duration of the TPR process.

In my view, section 7B-1003 prohibits the filing of a TPR motion or petition during pendency of a custody appeal. Once the Court of Appeals' mandate for the custody appeal issues, all of the statutory timelines proceed as written, without modification. Section 7B-907(e) requires DSS to file a petition within sixty days "from the date of the permanency planning hearing," but carves out an exception: the trial court can "make[ ] written findings why the petition cannot be filed

within 60 days." *Id.* § 7B-907(e) (2011). Thus, if a custody order is appealed, the legislature allows the trial court to issue a written order exempting DSS from the sixty-day requirement. The trial court would then specify that DSS must file its TPR petition or motion within sixty days of issuance of the mandate. *Id.* This interpretation of section 7B-1003 is consistent with the existing provisions of the Juvenile Code and thus is preferable to the majority's view. Unlike today's holding, my view requires no judicial exercise of the legislative pen and maintains the current balance of protecting parental and juvenile rights. At the same time, it serves the best interests of the child.