IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-48

No. 363PA17-2

Filed 23 April 2021

IN THE MATTER OF: J.M. & J.M.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 22 January 2020 by Judge Shamieka L. Rhinehart in District Court, Durham County. This matter was calendared in the Supreme Court on 19 March 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*The Law Office of Derrick J. Hensley, PLLC, by Derrick J. Hensley, Esq., for petitioner-appellee Durham County Department of Social Services.*

*Matthew D. Wunsche, for appellee Guardian ad Litem.*

*Richard Croutharmel for respondent-appellant father.*

HUDSON, Justice.

¶ 1 Respondent-father appeals from orders entered by the trial court terminating his parental rights to his daughter J.M. (Jazmin)[1] and to his son J.M. (James). After careful review, we vacate the order terminating respondent-father's parental rights to Jazmin and affirm the order terminating respondent-father's parental rights to James.

---

[1] Pseudonyms are used to protect the identity of the minor children and for ease of reading.

## I.   Factual and Procedural Background

On 11 September 2015, Durham County Department of Social Services (DSS) filed a juvenile petition alleging that twenty-three-month-old Jazmin and two-month-old James were abused, neglected, and dependent juveniles. On the same day, DSS obtained nonsecure custody of the children, and the trial court approved DSS's placement of the children with their maternal grandparents, who lived in New York but regularly visited Durham.

The juvenile petition alleged that the mother had previously claimed, but later denied, that respondent-father hit Jazmin, and that the family had received in-home services since March 2015 due to a finding of improper care based on the mother's allegations. Months later, marks were observed on James's neck when the mother took him to a well-baby checkup on 8 September 2015. James was sent to UNC hospitals for further testing, which revealed that James had healing fractures to his ribs, tibia, and fibula; bruising to his ear and tongue; subconjunctival hemorrhages; and excoriation under his chin. The mother told the following to DSS: (1) she witnessed respondent-father "flicking" James in the chin and punching James in the stomach; (2) she witnessed respondent-father excessively discipline Jazmin by hitting her with a back scratcher and hitting her in the face; (3) there had been domestic violence between respondent-father and herself in the presence of the children; (4) respondent-father smoked marijuana in the presence of the children; and (5) she had

not been forthcoming during the prior Child Protective Services investigation in February 2015. Additionally, the petition alleged James "had a history of poor weight gain due to . . . not being fed on a regular schedule[,]"and both the mother and respondent-father had mental health diagnoses.

¶ 4        In October 2015, respondent-father was arrested for child abuse related to James. In April 2017, respondent-father was convicted of felony child abuse inflicting serious injury upon James and sentenced to 92 to 123 months' imprisonment. Respondent-father's conviction was upheld on appeal. *State v. Martin*, 833 S.E.2d 263, 2019 WL 5219970 (N.C. Ct. App. 2019) (unpublished), *appeal dismissed and disc. review denied*, 374 N.C. 750 (2020).

¶ 5        Prior to the criminal proceedings, the juvenile petition was heard on 12 July 2016. In an adjudication, disposition, and permanency planning order entered on 21 November 2016, the trial court adjudicated Jazmin to be a "seriously neglected" juvenile "due to inappropriate discipline by the father and inaction by the mother[,]" and it adjudicated James to be an abused juvenile in that respondent-father "inflicts on the child[ ] . . . serious physical injury by other than accidental means" and the mother "allows to be inflicted on the child[ ] . . . a serious physical injury by other than accidental means." The trial court continued custody of Jazmin and James in DSS with their placement with their maternal grandparents, ceased reunification efforts with the parents, suspended the parents' visitation with the children, and set

the primary permanent plan for the children as guardianship with a secondary plan for adoption.

¶ 6       The children's mother relinquished her parental rights on 1 December 2016. Respondent-father appealed the adjudication, disposition, and permanency planning order on 21 December 2016.

¶ 7       In an opinion issued on 19 September 2017, the Court of Appeals: (1) affirmed the adjudication of James as an abused juvenile, given that "[t]he binding findings of fact establish[ed] that [James] sustained multiple non-accidental injuries and [r]espondent-father was responsible for the injuries[,]" *In re J.M.*, 255 N.C. App. 483, 495 (2017); (2) reversed and remanded the adjudication of Jazmin as a seriously neglected juvenile, holding that the trial court acted under a misapprehension of the law as "[t]he term 'serious neglect' pertains only to placement of an individual on the responsible individuals' list and is not included as an option for adjudication in an abuse, neglect, or dependency action[,]" *id.* at 497; and (3) vacated the portion of the order relieving DSS from making further reunification efforts because the trial court failed to follow the statutory requirements of N.C.G.S. § 7B-901(c) in the initial disposition order, *id.* at 500. This Court initially granted respondent-father's petition for discretionary review on 7 December 2017, *In re J.M.*, 370 N.C. 383 (2017), but later, on 8 June 2018, determined discretionary review was improvidently allowed. *In re J.M.*, 371 N.C. 132 (2018).

¶ 8 The trial court continued to conduct permanency planning review hearings while respondent-father's appeals were pending, but DSS was unable to proceed with the Court of Appeals' remand related to Jazmin while respondent-father's petition for discretionary review to this Court was pending.

¶ 9 On 6 August 2019, the children's guardian *ad litem* (GAL) filed separate motions to terminate respondent-father's parental rights to Jazmin and James. The motion to terminate respondent-father's parental rights to Jazmin alleged grounds existed to terminate parental rights for neglect, willful failure to pay a reasonable portion of the cost of care, and willful abandonment. *See* N.C.G.S. § 7B-1111(a)(1), (3), (7) (2019). The motion to terminate respondent-father's parental rights to James alleged grounds existed to terminate parental rights for neglect, willful failure to make reasonable progress, willful failure to pay a reasonable portion of the cost of care, and willful abandonment. *See* N.C.G.S. § 7B-1111(a)(1)–(3), (7) (2019).

¶ 10 On 8 August 2019, the initial juvenile petition came back on for hearing in the trial court pursuant to the Court of Appeals' remand related to Jazmin. The hearing was conducted over the course of 8, 9, and 12 August 2019. On 1 November 2019, the trial court entered adjudicatory and dispositional orders (the "remand orders") that adjudicated Jazmin to be a neglected juvenile, continued her custody in DSS, suspended respondent-father's visitation, and set the permanent plan for Jazmin as adoption with secondary plans for reunification or guardianship.

¶ 11 Although the remand orders were entered on 1 November 2019, they were not served until 27 November 2019. On 9 December 2019, respondent-father filed timely notice of appeal from the remand orders to the Court of Appeals.[2] *See* N.C.G.S. § 7B-1001(b) (2019).

¶ 12 Also on 9 December 2019, after respondent-father filed his notice of appeal from the remand orders, the GAL's motions to terminate respondent-father's parental rights to Jazmin and James came on for hearing. The termination hearing was conducted over the course of 9 and 10 December 2019, and the trial court entered separate orders terminating respondent-father's parental rights to Jazmin and James on 22 January 2020. In one order, the court concluded grounds existed to terminate respondent-father's parental rights to Jazmin pursuant to N.C.G.S. § 7B-1111(a)(1), (3), and (7), and it was in Jazmin's best interests to terminate parental rights. In the other order, the trial court concluded grounds existed to terminate respondent-father's parental rights to James pursuant to N.C.G.S. § 7B-1111(a)(1)–(3) and (7), and it was in James's best interests to terminate parental rights. Respondent-father appealed from both termination orders.

## II.    Analysis

---

[2] Respondent-father's notice of appeal included the names of Jazmin and James and the file numbers for both of their juvenile cases. However, before the appeal was docketed in the Court of Appeals, the trial court entered an order on 24 January 2020 that dismissed any appeal related to James because there were no appealable orders entered on 1 November 2019 concerning James.

**A. Termination of Parental Rights to Jazmin**

¶ 13     On appeal from the order terminating respondent-father's parental rights to Jazmin, respondent-father argues the trial court lacked subject matter jurisdiction to proceed with termination of his parental rights while he appealed the remand orders. We agree the trial court exceeded the statutory limits placed on the trial court's subject matter jurisdiction and hold the order terminating respondent-father's parental rights to Jazmin is void.

¶ 14     "Subject matter jurisdiction is the indispensable foundation upon which valid judicial decisions rest, and in its absence a court has no power to act[.]" *In re T.R.P.*, 360 N.C. 588, 590 (2006) (citing *Hart v. Thomasville Motors, Inc.*, 244 N.C. 84, 90 (1956)). "Because a court must have subject matter jurisdiction in order to adjudicate the case before it, 'a court's lack of subject matter jurisdiction is not waivable and can be raised at any time.'" *In re L.T.*, 374 N.C. 567, 569 (2020) (quoting *In re K.J.L.*, 363 N.C. 343, 346 (2009)).

¶ 15     "In matters arising under the Juvenile Code, the court's subject matter jurisdiction is established by statute." *In re K.J.L.*, 363 N.C. at 345. Therefore, "the General Assembly can, within the bounds of the Constitution, set whatever limits it wishes on the possession or exercise of that jurisdiction, including limits on jurisdiction during a pending appeal." *In re M.I.W.*, 365 N.C. 374, 377 (2012).

¶ 16     As we explained in *In re M.I.W.*, "[g]enerally, N.C.G.S. § 1-294 operates to stay

further proceedings in the trial court upon perfection of an appeal." *Id.* However, "[g]iven the unique nature of the Juvenile Code, with its overarching focus on the best interest of the child[,]" and in recognition "that the needs of the child may change while legal proceedings are pending on appeal[,]" the General Assembly enacted a modified approach for juvenile cases in N.C.G.S. § 7B-1003, which allows the trial court to continue to exercise jurisdiction and hold hearings pending disposition of an appeal, except that the trial court may not proceed with termination of parental rights under Article 11 of the Juvenile Code. *Id.* at 378–79. Specifically, the statute provides:

> (b) Pending disposition of an appeal, unless directed otherwise by an appellate court or subsection (c) of this section applies, the trial court shall:
>
> > (1) Continue to exercise jurisdiction and conduct hearings under this Subchapter with the exception of Article 11 of the General Statutes; and
> >
> > (2) Enter orders affecting the custody or placement of the juvenile as the court finds to be in the best interests of the juvenile.

N.C.G.S. § 7B-1003(b) (2019).[3]

In *In re M.I.W.*, we considered whether the trial court had subject matter jurisdiction over a motion to terminate parental rights that was filed while the

---

[3] Subsection (c) of N.C.G.S. § 7B-1003 governs the trial court's exercise of jurisdiction pending disposition of an appeal of a termination order entered under Article 11 of the Juvenile Code, and it is irrelevant to the issues presented in this case.

parents' appeals of a disposition order were pending. *In re M.I.W.*, 365 N.C. at 376.

In analyzing N.C.G.S. § 7B-1003(b), we noted the difference between having

jurisdiction and exercising jurisdiction:

> Exercising jurisdiction, in the context of the Juvenile Code, requires putting the court's jurisdiction into action by holding hearings, entering substantive orders or decrees, or making substantive decisions on the issues before it. In contrast, having jurisdiction is simply a state of being that requires, and in some cases allows, no substantive action from the court.

*Id.* at 379. We explained that N.C.G.S. § 7B-1003(b) does not divest the court of

jurisdiction in termination proceedings during an appeal but does unambiguously

prohibit the trial court from exercising jurisdiction in termination proceedings while

disposition of an appeal is pending. *Id.* at 375, 378–79. The "issuance of the mandate

by the appellate court," upon the conclusion of the appeal, "returns the power to

exercise subject matter jurisdiction to the trial court." *Id.* at 375. Accordingly, we

affirmed the termination of parental rights in *In re M.I.W.* where the motion to

terminate parental rights was filed during the pendency of the parents' appeal, but

the trial court did not exercise subject matter jurisdiction over the termination motion

until after the mandate in the appeal had issued and the period for the parents to

petition for discretionary review had expired. *Id.* at 380.

¶ 18        Unlike *In re M.I.W.*, the issue in the instant case is the trial court's exercise of

subject matter jurisdiction to conduct the termination hearing pending the

disposition of respondent-father's appeal from the remand orders in Jazmin's case. Here, the GAL filed the termination motion on 6 August 2019. There was no appeal pending at that time. The remand orders adjudicating Jazmin to be a neglected juvenile were later entered on 1 November 2019, and respondent-father filed notice of appeal from the remand orders on 9 December 2019.[4] Minutes after the notice of appeal was filed, the trial court commenced the termination hearing. It is evident that the trial court was aware respondent-father had filed notice of appeal from the remand orders, as the trial court indicated near the beginning of the termination hearing that the notice of appeal was in the court file. Nevertheless, the trial court continued with the termination hearing.

¶ 19        There is no question the trial court violated N.C.G.S. § 7B-1003(b) by exercising jurisdiction to conduct the hearing on the motion to terminate respondent-father's parental rights to Jazmin while disposition of his appeal from the remand orders was pending and by entering the order terminating respondent-father's parental rights to Jazmin on 22 January 2020. Both DSS and the GAL agree that the trial court violated N.C.G.S. § 7B-1003(b). The contested issue on appeal is the effect

---

[4] We take judicial notice that respondent-father's appeal from the remand orders entered in Jazmin's case was docketed and perfected in the Court of Appeals in file number COA20-153 on 2 March 2020, when the record on appeal was filed. *See State v. Thompson*, 349 N.C. 483, 497 (1998) ("This Court may take judicial notice of the public records of other courts within the state judicial system."). Once an appeal is docketed, the perfection of the appeal relates back to filing of notice of appeal. *Swilling v. Swilling*, 329 N.C. 219, 225 (1991).

of the violation.

¶ 20     Respondent-father argues the trial court's exercise of subject matter jurisdiction to conduct the termination hearing in violation of N.C.G.S. § 7B-1003(b) renders the order terminating his parental rights to Jazmin void. DSS concedes the issue and agrees with respondent-father that the termination order must be vacated. The GAL, however, argues respondent-father should be required to demonstrate prejudice resulting from the trial court's erroneous exercise of jurisdiction, just as a showing of prejudice is generally required to prevail on claims that the trial court violated a statutory mandate. The GAL relies on this Court's distinction between "having jurisdiction" and "exercising jurisdiction" in *In re M.I.W.* and this Court's holding that N.C.G.S. § 7B-1003 prohibits only the exercise of jurisdiction and does not remove jurisdiction. *In re M.I.W.*, 365 N.C. at 379.

¶ 21     We decline to adopt the GAL's position here. While we again acknowledge that N.C.G.S. § 7B-1003(b) does not divest the trial court of subject matter jurisdiction over the juvenile proceeding as a whole, we emphasize that N.C.G.S. § 7B-1003(b) does constrain the trial court's exercise of its subject matter jurisdiction in termination proceedings. Specifically, "the relevant statutory language unambiguously prohibits the trial court from doing . . . two things regarding termination proceedings while an appeal is pending: exercising jurisdiction and conducting hearings." *Id.* at 378–79. "Where jurisdiction is statutory and the [General

Assembly] requires the Court to exercise its jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the [c]ourt to certain limitations, an act of the [c]ourt beyond these limits is in excess of its jurisdiction." *In re T.R.P.*, 360 N.C. at 590 (quoting *Eudy v. Eudy*, 288 N.C. 71, 75 (1975). Here, respondent-father properly perfected his appeal, and with knowledge of that appeal, the trial court proceeded with a hearing for termination of respondent-father's parental rights. Thus, the trial court clearly acted beyond the limitations statutorily placed on its subject matter jurisdiction.

¶ 22    When addressing appeals controlled by N.C.G.S. § 1-294, this Court has not assessed whether an appealing party was prejudiced by orders entered after a notice of appeal for civil cases. *See generally Lowder v. All Star Mills, Inc.*, 301 N.C. 561, 581, 273 S.E.2d 247, 259 (1981). Rather, we have held that orders entered after the notice of the appeal "are void for want of jurisdiction." *Id.* The GAL has not identified any case law or statutory language that compels us to conclude anything different in this case when addressing the jurisdictional limits under N.C.G.S. § 7B-1003(b).

¶ 23    Here, where the trial court conducted the hearing on the motion to terminate respondent-father's parental rights to Jazmin while the disposition of respondent-father's appeal from the remand orders in Jazmin's case was pending, we hold the trial court acted in excess of the statutory limits on its subject matter jurisdiction set forth in N.C.G.S. § 7B-1003(b), and the resulting termination order is thus void.

Accordingly, we vacate the trial court's 22 January 2020 order terminating respondent-father's parental rights in Jazmin.

**B. Termination of Parental Rights to James**

On appeal from the order terminating respondent-father's parental rights to James, counsel for respondent-father has filed a no-merit brief on respondent-father's behalf pursuant to N.C. R. App. P. 3.1(e) (2020). Counsel identified three issues that could arguably support an appeal but also explained why he believed those issues lacked merit. Counsel also advised respondent-father of his right to file pro se written arguments on his own behalf and provided him with the necessary documents to do so. Respondent-father has submitted a pro se brief to this Court, but he did so some sixty days after the filing of the no-merit brief, making his brief untimely. *Id.* ("The appellant . . . may file a pro se brief within thirty days after the date of the filing of counsel's no-merit brief."). Nevertheless, because counsel did not precisely inform respondent-father of the deadline to file his pro se brief, *see id.* ("Counsel must inform the appellant in writing that the appellant may file a pro se brief and that the pro se brief is due within thirty days after the date of the filing of the no-merit brief."), but instead only advised respondent-father to submit his pro se brief "immediately" if he intended to do so, we exercise our authority under N.C. R. App. P. 2 and consider respondent-father's arguments.

Respondent-father spends a considerable portion of his pro se brief rearguing

the evidence which led to James's removal from the home. Based on his own version of the facts, respondent-father denies any responsibility for James's injuries, challenges James's prior adjudication as an abused juvenile, and pleads for a second chance to parent James. We see no merit in respondent-father's arguments. This Court's role on appeal is not to reweigh the evidence. *In re A.J.T.*, 374 N.C. 504, 510 (2020) (citing *In re J.A.M.*, 372 N.C. 1, 11 (2019)). Furthermore, the trial court's prior adjudication of James as an abused juvenile and its findings of fact in support of the adjudication were upheld on appeal. *In re J.M.*, 255 N.C. App. 483 (2017), *disc. review improvidently allowed*, 371 N.C. 132 (2018). The prior decision on appeal is binding as the law of the case. *In re J.A.M.*, 375 N.C. 325, 332 (2020) (explaining that the Court's prior decision on appeal from an adjudication of neglect "constitutes 'the law of the case' and is binding as to the issues decided therein" during a subsequent appeal of a termination order).

¶ 26        Respondent-father also challenges the trial court's adjudication of grounds to terminate his parental rights to James under N.C.G.S. § 7B-1111(a)(1)–(3) and (7). Respondent-father presents few cognizable legal arguments, and he cites no authority in his brief to support his contentions.

¶ 27        This Court reviews the trial court's adjudication of grounds to terminate parental rights under N.C.G.S. § 7B-1109 "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the

conclusions of law." *In re C.B.C.*, 373 N.C. 16, 19 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111 (1984)). "The trial court's conclusions of law are reviewable de novo on appeal." *Id.* The adjudication of only one ground is necessary to terminate parental rights. *Id.* at 23.

¶ 28      Grounds exist to terminate parental rights pursuant to N.C.G.S. § 7B-1111(a)(3) if

> [t]he juvenile has been placed in the custody of a county department of social services, . . . and the parent has for a continuous period of six months immediately preceding the filing of the petition or motion willfully failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.

¶ 29      N.C.G.S. § 7B-1111(a)(3) (2019). This Court has long recognized that "[a] parent is required to pay that portion of the cost of foster care for the child that is fair, just and equitable based upon the parent's ability or means to pay." *In re Clark*, 303 N.C. 592, 604 (1981). Where a parent has the ability to pay some amount greater than zero but pays nothing, the parent has failed to pay a reasonable portion of the cost of care within the meaning of N.C.G.S. § 7B-1111(a)(3). *See In re J.A.E.W.*, 375 N.C. 112, 117–18 (2020).

¶ 30      In James's case, the trial court concluded:

> [g]rounds exist to terminate [respondent-father's] parental rights . . . to [James] under N.C.G.S. § 7B-1111(a)(3) in that [James] was placed in the custody of DCDSS and for the six months preceding the filing of the petition, [respondent-]father willfully failed to pay a reasonable

portion of the cost of care for [James] although physically
and financially able to do so.

In support of the conclusion, the trial court made findings regarding James's placement in DSS's custody and the cost of his care. The trial court also found that respondent-father was able to work while incarcerated and did in fact work various jobs while incarcerated; in the six months preceding the filing of the termination motion on 6 August 2019, respondent-father earned $60.78 from work and received $655.00 in deposits into his account from friends and family. Yet, respondent-father "contributed nothing whatsoever to the cost [of James's] care" during the relevant six-month period.

Respondent-father does not challenge the evidentiary basis for the trial court's findings, and the findings are thus "deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407 (2019) (citing *Koufman v. Koufman*, 330 N.C. 93, 97 (1991)).

We hold the trial court's findings support the conclusion that grounds exist under N.C.G.S. § 7B-1111(a)(3) to terminate respondent-father's parental rights to James. "The trial court's conclusion that one ground existed to terminate parental rights 'is sufficient in and of itself to support termination of . . . parental rights[.]' " *In re S.E.*, 373 N.C. 360, 367 (2020) (quoting *In re T.N.H.*, 372 N.C. at 413). Therefore, we do not address the other grounds adjudicated by the trial court for termination.

Lastly, respondent-father asserts allegations of ineffective assistance of

counsel.

> Parents have a right to counsel in all proceedings dedicated
> to the termination of parental rights. Counsel necessarily
> must provide effective assistance, as the alternative would
> render any statutory right to counsel potentially
> meaningless. To prevail on a claim of ineffective assistance
> of counsel, respondent must show that counsel's
> performance was deficient and the deficiency was so
> serious as to deprive him of a fair hearing. To make the
> latter showing, the respondent must prove that there is a
> reasonable probability that, but for counsel's errors, there
> would have been a different result in the proceedings.

*In re G.G.M.*, 2021-NCSC-25, ¶ 35.

Respondent-father contends his counsel was ineffective in that counsel allegedly failed to advise him of what he needed to do to regain custody of James, including the need for him to contribute to James's cost of care while respondent-father was incarcerated in order to avoid termination pursuant to N.C.G.S. § 7B-1111(a)(3). Respondent-father also faults counsel for allegedly informing the court that he consented to guardianship and for not challenging the primary permanent plan of guardianship with a secondary plan of adoption. Lastly, respondent-father contends counsel was ineffective to the extent counsel did not further pursue a second appeal of James's adjudication as an abused juvenile following the trial court's entry of the remand orders on 1 November 2019.

Respondent-father has not met his burden in this case to establish ineffective assistance of counsel. As to respondent-father's assertions of ineffective assistance of

counsel related to the adjudication of grounds for termination, even if respondent-father's allegations of deficient performance by counsel are true, he is unable to establish the required prejudice. *See Braswell*, 312 N.C. at 563 ("[I]f a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient."). As explained above, the trial court's adjudication that grounds exist to terminate parental rights pursuant to N.C.G.S. § 7B-1111(a)(3) was sufficient to support termination. Given that parents have an inherent duty to provide support for their children and ignorance of the duty does not excuse a parent's failure to provide support, *see In re S.E.*, 373 N.C. at 366, respondent-father has not established prejudice based on counsel's alleged failure to advise him of his inherent duty to contribute to James's cost of care. Additionally, to the extent respondent-father contends counsel was ineffective in failing to further pursue a second appeal in James's case from the remand orders, respondent-father has not established deficient performance. Because the Court of Appeals affirmed the trial court's 21 November 2016 adjudication of James as an abused juvenile and only remanded the matter as to Jazmin's case in *In re J.M.*, 255 N.C. App. at 495, 497, James's case was not before the trial court on remand, and there was nothing in the 1 November 2019 remand orders to be appealed in James's case. There is no merit to respondent-father's

ineffective assistance of counsel arguments, and, overall, we hold respondent-father's pro se arguments are meritless.

¶ 37     In addition to reviewing respondent-father's pro se arguments, we have independently reviewed the three issues identified in the no-merit brief submitted by respondent-father's counsel under Rule 3.1(e). *In re L.E.M.*, 372 N.C. 396, 402 (2019). Upon careful consideration of those issues in light of the entire record, we are satisfied that the trial court's 22 January 2020 order terminating respondent-father's parental rights in James was supported by competent evidence and based on proper legal grounds. Accordingly, we affirm the termination of respondent-father's parental rights in James.

## III.     Conclusion

¶ 38     Therefore, we vacate the trial court's 22 January 2020 order terminating respondent-father's parental rights in Jazmin, and affirm the termination of respondent-father's parental rights in James.

VACATED IN PART; AFFIRMED IN PART.

Justice BERGER did not participate in the consideration or decision of this case.