IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-153

Filed: 31 December 2020

Durham County, No. 15 JA 146

IN THE MATTER OF: J.M., Minor child.

Appeal by respondent-father from orders entered 1 November 2019 by Judge Shamieka L. Rhinehart in Durham County District Court. Heard in the Court of Appeals 17 November 2020.

> *The Law Office of Derrick J. Hensley, PLLC, by Derrick J. Hensley, for petitioner-appellee Durham County Department of Social Services.*
>
> *Matthew D. Wunsche for guardian ad litem.*
>
> *Richard Croutharmel for respondent-appellant father.*

ZACHARY, Judge.

Respondent, the father of "Jazmin,"[1] appeals from adjudication and disposition orders entered on remand, in which the trial court concluded that Jazmin was a neglected juvenile and ordered that she remain in the custody of the Durham County Department of Social Services. After careful review, we affirm.

## *Background*

---

[1] The pseudonym adopted by the parties is used for ease of reading and to protect the juvenile's identity.

This case arises out of a hearing and orders entered on remand following this Court's decision in *In re J.M.*, 255 N.C. App. 483, 804 S.E.2d 830 (2017), *disc. review improvidently allowed*, 371 N.C. 132, 813 S.E.2d 847 (2018) (per curiam). A complete recitation of the underlying facts in this case can be found in that prior opinion. We recite here those facts necessary for our disposition of this appeal.

On 11 September 2015, the Durham County Department of Social Services ("DSS") filed a juvenile petition alleging that Jazmin and her younger brother were abused, neglected, and dependent juveniles. On 12 July 2016, the matter came on for hearing in Durham County District Court before the Honorable William A. Marsh, III. Judge Marsh rendered his findings of fact and conclusions of law in open court, and entered his written order on 21 November 2016. Judge Marsh concluded that Jazmin was a "seriously neglected child" and that her brother was an abused child. Judge Marsh further concluded that "[r]eunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile[s'] health or safety." Judge Marsh suspended the parents' visitation with their children, and set guardianship with the children's maternal grandparents as the primary permanent plan, with adoption as the secondary plan.

Respondent appealed to this Court.[2] Respondent challenged eight of the trial court's findings of fact; this Court determined that all but one finding and portions of

---

[2] The children's mother did not join in Respondent's appeal of the trial court's order. *Id.* at 486 n.1, 804 S.E.2d at 833 n.1.

two other findings were supported by competent evidence. *Id.* at 486–95, 804 S.E.2d at 833–38. On 19 September 2017, this Court affirmed in part, vacated in part, and reversed in part and remanded the trial court's order. *Id.* at 500, 804 S.E.2d at 841. This Court affirmed the trial court's adjudication of Jazmin's brother as an abused juvenile, *id.* at 495–96, 804 S.E.2d at 838–39, and vacated the "portion of the trial court's order that released DSS from further reunification efforts," *id.* at 500, 804 S.E.2d at 841. However, we reversed the adjudication of Jazmin as "seriously neglected" because "the trial court was acting under a misapprehension of the law— the trial court used the definition of 'serious neglect' in N.C.G.S. § 7B-101(19a), pertaining to the responsible individuals' list, as opposed to the definition of 'neglect' in N.C.G.S. § 7B-101(15), pertaining to an adjudication of neglect." *Id.* at 497, 804 S.E.2d at 839. This Court remanded that adjudication "for the trial court's consideration of neglect within the proper statutory framework." *Id.*

On 8 June 2018, after hearing oral arguments, our Supreme Court determined that it had improvidently allowed discretionary review of this Court's opinion. *In re J.M.*, 371 N.C. 132, 813 S.E.2d 847 (2018) (per curiam). By the time this matter returned to the district court on remand, Judge Marsh's term had ended and he was

no longer a district court judge.[3] On 14 November 2018, following the recusal of another judge, this matter was assigned to the Honorable Shamieka L. Rhinehart.

On 17 June 2019, following a pretrial hearing, Judge Rhinehart determined, over Respondent's objection, that the transcript of the 12 July 2016 hearing before Judge Marsh, as well as "[a]ll exhibits previously accepted by the Court in the prior hearing[,]" constituted "competent, relevant and admissible evidence and [would] be allowed admitted." Judge Rhinehart similarly determined that she was "bound by any and all orders, rulings and findings of the Court of Appeals and [would] not disturb those," and that she would "take judicial notice of any Findings of Fact and decretal portions of the order of Judge Marsh which [were] not challenged or disturbed by the Court of Appeal's opinion referenced above and [would] therefore adopt those findings."

On 8 August 2019, this matter came on for hearing on remand before Judge Rhinehart. Consistent with her pretrial ruling, Judge Rhinehart admitted the 2016 hearing transcript into evidence, over Respondent's renewed objection. Judge Rhinehart then admitted into evidence several other exhibits—including Jazmin's September 2015 Complete Medical Examination ("CME") and her brother's medical records—that had been accepted by Judge Marsh at the 2016 hearing. Judge

---

[3] Judge Marsh was defeated in the 2016 general election. N.C. STATE BD. OF ELECTIONS, 11/08/2016 Official General Election Results – Durham, https://er.ncsbe.gov/?election_dt=11/08/2016&county_id=32&office=JUD&contest=1283 (last visited Dec. 1, 2020).

Rhinehart also took judicial notice of Judge Marsh's findings of fact "that were undisturbed [by] the Court of Appeals" as well as his adjudication of Jazmin's brother as abused.

Neither DSS, nor the guardian *ad litem*, nor Respondent offered any new testimony or other evidence at the adjudication phase. After hearing the arguments of counsel, Judge Rhinehart rendered her findings of fact and conclusions of law in open court, determining, *inter alia*, that Jazmin was a neglected juvenile. Following a disposition hearing at which Respondent testified, Judge Rhinehart ordered, *inter alia*, that (1) Jazmin remain in the temporary legal custody of DSS and the physical custody of her maternal grandparents; and (2) Respondent's visitation with Jazmin be suspended, with the provision that Respondent could send Jazmin cards through her social worker. Judge Rhinehart also set adoption as the permanent primary plan, with reunification or guardianship as secondary plans.

On 1 November 2019, Judge Rhinehart entered separate written adjudication and disposition orders, documenting the rulings announced in open court. Respondent timely appealed.

### Standard of Review

"The allegations in a petition alleging that a juvenile is abused, neglected, or dependent shall be proved by clear and convincing evidence." N.C. Gen. Stat. § 7B-805 (2019).

> The role of this Court in reviewing a trial court's adjudication of neglect . . . is to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact. If such evidence exists, the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary.

*In re T.N.G.*, 244 N.C. App. 398, 405–06, 781 S.E.2d 93, 99 (2015) (citation and internal quotation marks omitted). "Unchallenged findings are binding on appeal." *In re V.B.*, 239 N.C. App. 340, 341, 768 S.E.2d 867, 868 (2015). The trial court's conclusion that a juvenile is neglected is subject to de novo review on appeal. *Id.*

### *Discussion*

Respondent argues on appeal that the trial court "reversibly erred in concluding that Jazmin was a neglected juvenile at the remand adjudication hearing" because Judge Rhinehart "resolved an evidentiary conflict, that the initial adjudication hearing judge had not resolved, without hearing any sworn testimony." We disagree.

On appeal, Respondent asserts:

> The issue here is whether a judge acting in a substitute capacity (Judge Rhinehart) had the authority to resolve an evidentiary conflict (the mother's conflicting statements about Respondent-Father's care of the children) when the substitute judge heard no sworn testimony and relied solely on a written transcript of the hearing where the testimony was received by another judge (Judge Marsh).

Respondent's argument is premised on the oft-stated axiom that "when acting as the finder of fact, the trial court has the opportunity to observe the demeanor of

- 6 -

the witnesses and determine their credibility, the weight to be given their testimony and the reasonable inferences to be drawn therefrom." *Balawejder v. Balawejder*, 216 N.C. App. 301, 318, 721 S.E.2d 679, 689 (2011) (citation omitted). Respondent essentially contends that because Judge Rhinehart relied on a transcript of a previous hearing, which denied her the opportunity to observe the demeanor of the witnesses, Judge Rhinehart lacked the authority to make findings of fact that resolved any conflicts in the evidence beyond those findings Judge Marsh made in the original order.

I.     *Role of Judge on Remand*

We first address Respondent's assertion that at the hearing on remand, Judge Rhinehart resolved an evidentiary conflict, and thereby violated her "ministerial duty [as a substitute judge] of carrying out the mandate of this Court[.]"

Respondent cites *State v. Bartlett*, 368 N.C. 309, 776 S.E.2d 672 (2015), a criminal case, in support of his assertion that Judge Rhinehart exceeded her authority as a substitute judge by acting in more than a ministerial manner. In *Bartlett*, after noting that "a trial court is in no better position than an appellate court to make findings of fact if it reviews only the cold, written record," *id.* at 313, 776 S.E.2d at 674, our Supreme Court interpreted N.C. Gen. Stat. § 15A-977(d) (2013)— part of our Criminal Procedure Act—as "requir[ing] *the judge who presides* at [a] suppression hearing to make the findings of fact necessary to decide" a motion to

suppress evidence in a criminal case, *id.* at 314, 776 S.E.2d at 675 (emphasis added). This holding, however, is not relevant to the instant juvenile case.

Respondent candidly admits that there is no similar requirement for adjudicatory orders in our Juvenile Code. *See* N.C. Gen. Stat. § 7B-807(b) (2019) ("The adjudicatory order shall be in writing and shall contain appropriate findings of fact and conclusions of law."). However, Respondent asserts that this Court's holding in *In re Whisnant*, 71 N.C. App. 439, 322 S.E.2d 434 (1984), lends additional support for his contention that Judge Rhinehart exceeded her authority as a substitute judge. In *Whisnant*, one judge presided over the hearing, but another judge signed the adjudication and disposition orders. *Id.* at 440, 322 S.E.2d at 434–35. This Court held that the judge presiding over the hearing must sign the order from that hearing, or the hearing must be conducted de novo before another judge. *Id.* at 442, 322 S.E.2d at 436.

Significantly, Rule 63 of our Rules of Civil Procedure was not applicable to the situation presented in *Whisnant*. *Id.* at 441, 322 S.E.2d at 435. Rule 63 permits expanded authority for a substitute judge in limited circumstances:

> If by reason of death, sickness or other disability, resignation, retirement, expiration of term, removal from office, or other reason, a judge before whom an action has been tried or a hearing has been held is unable to perform the duties to be performed by the court under these rules after a verdict is returned or a trial or hearing is otherwise concluded, then those duties, including entry of judgment, may be performed [by an appropriate substitute judge].

N.C. Gen. Stat. § 1A-1, Rule 63. The judge who presided over the hearing in *Whisnant* "was neither disabled nor did he ever make findings of fact." *Whisnant*, 71 N.C. App. at 441, 322 S.E.2d at 435.

In contrast, it is evident that Rule 63 applies to the case at bar. Unlike the original judge in *Whisnant*, Judge Marsh *was in fact "unable* to perform the duties to be performed by the court" on remand "by reason of . . . expiration of term," because during the pendency of the appeal, his term ended and he was not re-elected. N.C. Gen. Stat. § 1A-1, Rule 63 (emphasis added). Rule 63 thus authorized Judge Rhinehart "to perform the duties to be performed by the court" when the case returned to the district court on remand. *Id.* Accordingly, Respondent's reliance on *Whisnant* is misplaced.

Indeed, "[t]his Court has interpreted the language of Rule 63 to statutorily authorize a substitute judge to reconsider [on remand] an order entered by a judge who has since" left the bench. *Springs v. City of Charlotte*, 222 N.C. App. 132, 135, 730 S.E.2d 803, 805 (2012) (citing *In re Expungement for Kearney*, 174 N.C. App. 213, 214–15, 620 S.E.2d 276, 277 (2005)), *disc. review denied*, 366 N.C. 428, 736 S.E.2d 756 (2013). In *Springs*, the original trial court failed to enter a written opinion stating "its reasons for upholding or disturbing the finding or award" of punitive damages as required by N.C. Gen. Stat. § 1D-50, and thus this Court remanded the case to the trial court with instructions to reconsider, *inter alia*, the award of punitive damages.

*Id.* at 134, 730 S.E.2d at 804–05. Because the original trial court judge had retired, on remand a substitute judge entered the section 1D-50 punitive damages opinion. *Id.* at 134, 730 S.E.2d at 805. On appeal, this Court rejected the argument that "only [the retired judge] had jurisdiction to enter the [s]ection 1D-50 opinion," *id.*, and held that the substitute judge had the authority on remand under Rule 63 to enter the requisite section 1D-50 opinion that the original judge failed to enter, *id.* at 135, 730 S.E.2d at 805.

As DSS observes in its brief, Respondent's argument "might fare differently if the trial court's prior adjudication had been vacated, rather than essentially affirmed except for the remand" for reconsideration of the conclusion of law that Jazmin was "seriously neglected." The nature of our mandate on remand was limited and precise, and quite the opposite in effect from that of a vacatur. "When an order of a lower court is vacated, those portions that are vacated become void and of no effect." *In re D.S.*, 260 N.C. App. 194, 198, 817 S.E.2d 901, 905 (2018). On remand, however, "the general rule is that an inferior court must follow the mandate of an appellate court in a case without variation or departure." *In re S.R.G.*, 200 N.C. App. 594, 597, 684 S.E.2d 902, 904 (2009) (citation and internal quotation marks omitted), *disc. review and cert. denied*, 363 N.C. 804, 691 S.E.2d 19 (2010). "Remand is not intended to be an opportunity for either respondent or petitioner to retry its case." *In re J.M.D.*, 210 N.C. App. 420, 429, 708 S.E.2d 167, 173 (2011).

Here, Judge Rhinehart complied with this Court's mandate on remand, which was that the trial court reconsider Jazmin's adjudication "within the proper statutory framework." *J.M.*, 255 N.C. App. at 497, 804 S.E.2d at 839. We find no error in Judge Rhinehart's execution of her duty in presiding over the hearing on remand.

II.     <u>*Evidentiary Conflict*</u>

We are also unconvinced that Judge Rhinehart resolved an evidentiary conflict at the hearing on remand. As both Judge Marsh's and Judge Rhinehart's adjudication orders recite, Jazmin's mother made allegations concerning Respondent's mistreatment of Jazmin and her brother, and then recanted those allegations. Respondent contends that "Judge Marsh did not resolve this conflict regarding the mother's statements" and that Judge Rhinehart did resolve it by finding that "the mother's statements to others were more believable than the mother's recantation of those statements." Our careful review of the two adjudication orders finds little difference between Judge Rhinehart's consideration of the mother's recantation and Judge Marsh's.

The findings of fact in Judge Rhinehart's adjudication order to which Respondent appears to object on appeal are:

> 33. Notwithstanding [Jazmin's mother's] low cognitive functioning and mental health diagnoses and her failure to protect these children, [the mother] still sought medical attention for [Jazmin's brother] despite her expressions of fearfulness at the UNC ED. *The court finds that* [*the mother*] *did recant her statements made to the social*

*worker, medical personnel and her own mother, in that she subsequently denied that there was domestic violence between her and [Respondent] and denied that [Respondent] abused the children. People recant for various reasons, and the court does not know why [the mother] recanted her statement. But this court gives great weight to her statements made to medical professionals while she was seeking medical attention for [Jazmin's brother].*

34. Beth Herold of CANMEC testified as an expert in child maltreatment in the original hearing, and stated the opinion that the injuries observed in [Jazmin's brother] were consistent with the instances described by [the mother] in her statements to the medical staff at UNC. *The Court gives great weight to this consistency, in determining whether [the mother's] original statements are more credible than her subsequent recantation.*

(Emphases added).

Contrary to Respondent's assertions, at no point did Judge Rhinehart explicitly conclude that "the mother's statements to others were *more believable* than the mother's recantation of those statements."[4] (Emphasis added). Respondent reads between the lines and finds an explicit conclusion that does not exist regarding the weight afforded to the mother's various conflicting statements. Rather than resolving any conflicts in the findings of fact that Judge Marsh had not resolved, our careful

---

[4] Respondent also asserts that, in the oral rendition of her findings of fact following the adjudication hearing, "Judge Rhinehart openly stated that she was crediting the mother's allegations of mistreatment to others over the mother's subsequent recantation." In fact, Judge Rhinehart's spoken rendition at the hearing was substantively identical to the written findings of fact 33 and 34 in the adjudication order, quoted above.

review suggests that Judge Rhinehart's order is in accord with the implications of Judge Marsh's order.

The vast majority of Judge Marsh's findings of fact were either unchallenged by Respondent on appeal or survived that challenge. In either circumstance, those findings "are binding on appeal." *V.B.*, 239 N.C. App. at 341, 768 S.E.2d at 868. Judge Rhinehart was thus bound by the following relevant findings of fact from Judge Marsh's order:

> 7. The family received in-home services beginning in March 2015, due to a finding of improper care *based upon the mother disclosing that* [*Respondent*] *hit the child,* [*Jazmin*].
>
> 8. *The mother subsequently denied the hitting* and a CME in February 2015 was inconclusive.
>
> . . . .
>
> 12. During the week prior to Labor Day [2015], *the mother contacted her mother . . . in New York, several times a day by phone and text to attempt to tell her something. Finally, the mother called her mother, informing her that* [*Respondent*] *was treating the children too rough; it was serious; she didn't know how to handle it and he was abusing them. . . .*
>
> 13. On September 8, 2015, *the mother brought* [*Jazmin's brother*] *to a well-baby check-up and expressed her concerns to the doctor that* [*Respondent*] *was too rough with the child*. Marks on [the child]'s neck and conjunctival hemorrhages (bloodshot eyes) were observed by the medical provider. [The child] was two (2) months old at the time. The child was sent to UNC Hospital Emergency Department for further testing.

14. *The mother disclosed the same information to the Emergency Department doctor.* A consult was requested from the Beacon Program which reviews cases of suspected child maltreatment. [*The mother*] *repeated the same information to Holly Warner from the Beacon Program*, specifically that on separate occasions she had witnessed [Respondent] flicking the child . . . under the chin, holding him upside down by his ankles, and punching him in the stomach. [The] mother failed to take steps to adequately protect [the child].

15. A skeletal survey showed that [Jazmin's brother] had healing right tibia and fibula fractures. The child also had ear bruising, sub conjunctival hemorrhages, excoriation under the chin and tongue bruising. There was no history of falls, accidents or injuries to explain the injuries. . . . [*The child*]*'s injuries were consistent with the instances described by the mother.*[5]

. . . .

20. [*The mother*] *was not forthcoming during the prior CPS investigation in February 2015, and continued to mislead the in-home services social worker about the circumstances in the home during bi-weekly home visits.*

. . . .

22. [The mother] subsequently recanted her statements and moved out of the family home.

(Emphases added).

These findings evince a pattern of the mother making and recanting allegations—Judge Marsh went so far as to describe the mother as "not forthcoming"

---

[5] Although Respondent successfully challenged a portion—which we have omitted—of this finding of fact in his prior appeal, this Court "reject[ed] [his] argument as to finding of fact 15 in all other respects." *J.M.*, 255 N.C. App. at 494, 804 S.E.2d at 838.

and "mislead[ing]"—and acknowledge that the physical evidence and the testimony of others corroborated the mother's recanted allegations. While Judge Marsh's order does not explicitly state that he afforded more weight to the mother's original statements than to her recantation, that is the clear implication. In this respect, rather than resolving any unresolved evidentiary conflict, Judge Rhinehart's findings are consistent with Judge Marsh's original findings of fact. We are thus unconvinced by Respondent's assertion that Judge Rhinehart resolved any "evidentiary conflict" that Judge Marsh had not.

Finally, we note that Respondent's argument is centered not on the substance of Judge Rhinehart's adjudication of Jazmin as neglected, but rather on a dispute over the credibility of Jazmin's mother. Respondent is arguing less that the trial court erred in concluding that Jazmin was neglected, and more that it erred in finding that the mother's allegations against him were more credible than her recantations of those allegations. This focus is misguided.

"In determining whether a child is neglected, the determinative factors are the circumstances and conditions surrounding the child, not the fault or culpability of the parent." *In re Q.A.*, 245 N.C. App. 71, 74, 781 S.E.2d 862, 864 (2016) (citation omitted).

> The purpose of the adjudication and disposition proceedings should not be morphed on appeal into a question of culpability regarding the conduct of an individual parent. The question this Court must look at on

review is whether the court made the proper determination
in making findings and conclusions as to the status of the
juvenile.

*In re J.S.*, 182 N.C. App. 79, 86, 641 S.E.2d 395, 399 (2007).

After careful review of both adjudication orders in this case, and in light of our

mandate on remand that the trial court reconsider the adjudication of Jazmin "within

the proper statutory framework," *J.M.*, 255 N.C. App. at 497, 804 S.E.2d at 839, we

conclude that the trial court made the proper determination regarding Jazmin's

status. Respondent's argument is overruled.

### *Conclusion*

For the foregoing reasons, the trial court's adjudication and disposition orders

on remand are affirmed.

AFFIRMED.

Judges DIETZ and COLLINS concur.